UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

PEDRO RODRIGUEZ,

    Plaintiff,

v.

McCAIN FOODS USA, INC.,

    Defendant.

NO. CV-04-262-RHW

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

A bench trial in the above-captioned case was held in Spokane, Washington, on November 9 and 10, 2005, and concluded on November 14, 2005. Plaintiff was represented by Steven Lacy. Defendant was represented by Jerry Neal and J. Michael Keyes. These findings constitute the Court's final findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52(a).

## PROCEDURAL HISTORY

Pedro Rodriguez originally filed his cause of action in Adams County Superior Court. Defendant McCain Foods USA, Inc., removed the action to federal court on July 23, 2004. Jurisdiction is proper under 28 U.S.C. § 1332—Plaintiff is a citizen of Washington; Defendant is incorporated in Maine; and the amount in controversy exceeds $75,000. Defendant filed a motion for summary judgment on August 16, 2005, and the Court denied Defendant's motion on October 7, 2005.

## FACTS

Plaintiff Pedro Rodriguez began working for Defendant in its Othello,

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 1

Washington plant as a "Packaging Mechanic B" in 1988, and he worked in that capacity until March 16, 2004, when he was terminated.[1] He was 61 years old at the time of his termination. As a Packaging Mechanic B, Plaintiff was responsible for diagnosing maintenance problems, installing and setting up equipment, advising supervisory personnel on maintenance requirements, and repairing machinery. Plaintiff was also required to follow all safety procedures, including Defendant's "lockout/tagout" procedures, for which there was ongoing training. The lockout/tagout program is a compilation of various safety measures to be undertaken by McCain employees to ensure their safety and the safety of others during times that machinery is being maintained and/or repaired. It was developed to meet the requirements of the Washington Industrial Safety and Health Administration Lockout-Tagout standard.

      Plaintiff's employment was at-will, but Defendant's employee handbook does include optional corrective disciplinary procedures. These consist of a verbal warning, a written warning, probation and/or suspension, followed by termination. The handbook states that step three, probation and/or suspension, is a "final warning" and that "any further performance problems during this period of time will subject [the employee] to Step 4 Termination." McCain's employee handbook also sets forth various violations that may result in immediate termination, while reserving the at-will status of employment. Violations that may result in termination include "[a]ny unsafe act or practice that endangers life or property." Additionally, Defendant has a policy that states it does not tolerate bias or discrimination and sets forth reporting procedures for its employees in the event they encounter this treatment.

      Plaintiff underwent several performance reviews during his employment

---

[1] Plaintiff began working at the Othello plant in 1983, when it was owned and operated by Chef Reddy. Defendant McCain bought the factory in 1988.

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 2

with Defendant. In 1993, Plaintiff received an overall grade of "unacceptable"[2] and "needs improvement"[3] on his performance review, conducted by his former supervisor, Ben Ripley. Mr. Ripley gave Plaintiff an overall grade of "needs improvement" in his 1996 review. Plaintiff maintained this grade in the reviews conducted in October and December 2001 by his new supervisor, Alvin Korrell.[4]

Mr. Korrell noted in the October 2001 review that Plaintiff "also has a bad habit of not telling the truth when asked questions. This makes it very difficult to gather information when there has been a problem. I have to be very careful in using the information that I get from him." In the December 2001 review, Mr. Korrell stated that "I can not trust what he [Plaintiff] tells me to be true. This is one of his biggest downfalls." Mr. Korrell conducted his last review of Plaintiff in November 2002, giving him a grade of "acceptable."[5] In this review, Mr. Korrell noted that Plaintiff "tends to be a little dishonest if he believes he may get in trouble for something." Mr. Korrell's evaluation indicated that attendance had become one of Plaintiff's strengths, and rated him as acceptable in the area of safety. It was further noted that Plaintiff should get his hearing checked.

Plaintiff also received several disciplinary notices and warnings and was placed on probation and temporarily suspended during his tenure at McCain. The

---

[2] "Unacceptable" was defined as "[e]mployee has not been able to accomplish the responsibilities of the position."

[3] "Needs improvement" was defined as "[p]erformance resulted in the bare accomplishment of assigned responsibilities. A marginal performance."

[4] The "needs improvement" definition was altered for these later evaluations to the following: The employee "[d]oes not consistently meet position requirements. Specific requirements are needed for achieving an acceptable overall performance rating."

[5] "Acceptable" means "[r]egularly meets normal position requirements. Fully and adequately meets standards. No major performance issues."

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 3

majority of Plaintiff's disciplinary notices resulted from his failure to input information properly into McCain's computer system. Mr. Korrell issued the first of these warnings on August 25, 1999, after Plaintiff failed to correct information in the system after four requests to do so. Plaintiff received four other warnings for similar behavior—in March and mid-May 2003, he received verbal warnings; in late-May 2003 he received a written warning; and in August 2003, he was suspended for three days, all for failure to properly input information into McCain's computer system. Mr. Korrell disciplined Plaintiff for this behavior, pursuant to McCain policy. Plaintiff's name appeared on a computer-generated report at the close of the work week, and Plaintiff was given approximately three days to correct any incorrect entries into the system. At the end of this time period, if the entries were not corrected, Plaintiff was reported and a disciplinary notice was necessary. The evidence supports the conclusion that these disciplinary warnings did not contribute to McCain's decision to terminate Mr. Rodriguez.

Plaintiff was also disciplined for violations of McCain's lockout/tagout policy. Mr. Rodriguez was initially written up during an independent audit of his department. James Nelson, McCain Quality Performance Coordinator, conducts audits of each of the areas in the Othello plant to identify areas in which McCain can improve its production. On June 26, 2003, Mr. Nelson observed Plaintiff working on a machine while it was not "locked out," a direct violation of lockout/tagout. He reported this to Mr. Korrell, and on July 1, 2003, Mr. Korrell issued a disciplinary notice placing Plaintiff on probation for one year.

Plaintiff's other violation of lockout/tagout resulted in his termination. On March 16, 2004, Mr. Rodriguez was fired after an investigation conducted by Varon Blackburn from McCain's human resources department concluded that he violated lockout/tagout procedures again. On the early morning of March 11, 2004, Mr. Rodriguez was working with Chad Appleby on the graveyard shift. Mr. Appleby had an accident that resulted in his injury and triggered the investigation

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 4

of the night's events.[6]

Mr. Korrell suggested that Plaintiff get his hearing tested during his November 2002 performance review. After testing on December 12, 2002 showed a substantial hearing loss, Plaintiff filed an Industrial Insurance Claim on January 10, 2003. Mr. Korrell discussed Plaintiff's hearing with him before Plaintiff filed his Labor and Industries ("L&I") claim during his performance review. He arranged a hearing test for Mr. Rodriguez with the Company nurse, Jody Webber, based on complaints from Plaintiff's co-workers. Mr. Korrell did not discuss the possibility of filing an L&I claim before Plaintiff was tested. However, Ms. Webber assisted Plaintiff in filling out the claim form. Defendant did not dispute Plaintiff's hearing loss, its cause, or its severity, but the claim processing was delayed to determine when the injury actually occurred. A third-party administrator handles payments of industrial insurance claims without any direct involvement by Defendant.

Mr. Korrell learned of Plaintiff's L&I filing from Randy Knopp, Plaintiff's lead man, after the claim was filed, but before Plaintiff received his hearing aids. Plaintiff claims that Mr. Korrell, his supervisor, discouraged him from filing a claim and threatened to fire him, stating that the claim would cost Defendant money. Defendant and Mr. Korrell deny the allegation that he ever discussed the L&I claim with Plaintiff. Moreover, Mr. Korrell states there were no adverse consequences, financial or otherwise, to him or his department as a result of Plaintiff's L&I claim. Defendant paid Plaintiff's insurance claim, which was eventually determined to be $17,494.02, through its third-party administrator.

To determine whether the conversation between Plaintiff and Mr. Korrell

---

[6] Mr. Appleby lost the tip of his finger while attempting to tighten a chain with a motor running, without locks and guards in place. He was suspended for three days and placed on probation for a year for his part in the violation of the lockout/tagout procedures.

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 5

occurred as alleged, the Court must weigh the credibility of both Mr. Rodriguez and Mr. Korrell. There is no science to determining a witness's credibility; the Court has no fail-proof lie detector test or other method on which it can rely. Instead, the Court must weigh circumstantial evidence and the witness's own demeanor and behavior, past and present, to decide what, more likely than not, occurred. Here, both Mr. Rodriguez and Mr. Korrell appear to be individuals of good character, with likable dispositions. However, several factors weigh against a credibility determination in Mr. Rodriguez's favor: (1) Mr. Rodriguez's testimony regarding the conversation was indefinite; (2) the discipline upon which he relied in summary judgment pleadings as circumstantial evidence of retaliatory animus was shown to have merit through evidence adduced at trial; (3) there are at least three separate written statements from the period before Plaintiff filed his claim, questioning his honesty; (4) Plaintiff claimed he did not remember, and then denied outright, the occurrence of an incident during which Mr. Korrell verbally counseled him to obey lockout/tagout procedures in the Horsely Tunnel, an event attested to have occurred by Mr. Korrell, corroborated by Randy Knopp, and which would have resulted in Plaintiff's termination if reported; and (5) Plaintiff did not report this allegedly-threatening conversation to any of his superiors or to the company nurse, Ms. Webber, even when he was being disciplined and eventually terminated from his position. Additionally, Mr. Korrell had no apparent motive to threaten Plaintiff and, in fact, struggled to find a replacement for Mr. Rodriguez after he was terminated, and Mr. Korrell disciplined Plaintiff only when his behavior came to the attention of superiors and/or other supervisors at McCain, while he declined to discipline Plaintiff formally when he could. Consequently the Court finds that the weight of the evidence does not support a finding that the conversation between Mr. Rodriguez and Mr. Korrell took place as Plaintiff alleges.

      Regardless of whether this conversation actually occurred as alleged, the

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 6

Court finds there was sufficient evidence on the record to show that Defendant had a reasonable belief that Plaintiff violated lockout/tagout procedures on March 11, 2004, and that the decision to terminate Plaintiff was made without any retaliatory animus and according to company policy. Defendant followed internal procedures when it terminated Plaintiff. Four of Defendant's employees who were supervisors at the Othello plant, including Mr. Korrell, Plaintiff's supervisor; Varon Blackburn, manager of human resources; David Lance, the engineering manager; and Dennis Zattiero, the plant engineer; made the decision to fire Mr. Rodriguez.

      The information on which these four supervisors based their decision, as reflected in the notes they took while interviewing Plaintiff and his co-worker, Mr. Appleby, contains no hint of retaliatory or discriminatory animus. In fact, their notes reflect a concern about Plaintiff's safety habits that is consistent with the testimony from Mr. Korrell and Mr. Knopp that Plaintiff often did not practice safe working habits. Their notes and Mr. Appleby's statement also provide further evidence of Mr. Rodriguez's habit of not being entirely truthful with his supervisors. The evidence shows that Plaintiff was working on the machinery without his own locks and tags on it, and that he encouraged Mr. Appleby to fabricate a story about how he was injured in order to avoid discipline for the accident. Notes written by David Lance and Dennis Zattiero show that they noticed internal contradictions in Mr. Rodriguez's version of the events leading up to Mr. Appleby's accident, inconsistencies between Plaintiff's and Mr. Appleby's recounting of the events, and that they were generally concerned that Mr. Rodriguez was practicing unsafe work habits. As a result of their investigation, the four supervisors decided to place Mr. Appleby on probation and suspend him for three days, and to terminate Mr. Rodriguez's employment due to the fact that he was already on probation. Their decision regarding Mr. Rodriguez was consistent with the corrective discipline measures when an employee is on probation, as stated in McCain's employee handbook.

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 7

Nothing in the evidence provided shows any discriminatory or retaliatory animus on the part of Mr. Lance, Mr. Zattiero, or Mr. Blackburn, and their participation in the decision to terminate Mr. Rodriguez was necessary for his termination to be legitimate. Therefore, whether or not any conversation occurred between Mr. Rodriguez and Mr. Korrell 14 or more months before the incident that precipitated Plaintiff's termination, Plaintiff's age and/or his L&I claim did not play any part in three of the four supervisors' decision to fire Mr. Rodriguez.

## CONCLUSIONS

Plaintiff is alleging two separate state law claims: (1) age discrimination, in violation of Wash. Rev. Code §§ 49.44.090 and 49.60.180; and (2) common law wrongful discharge in violation of public policy.

**I.   Age Discrimination**

Under Washington law, an employer cannot terminate an employee on the basis of age. Wash. Rev. Code § 49.44.090(1). Specifically, the statute protects those employees who are 40 years of age or older. *Id.* To recover, Plaintiff has the burden of proving by a preponderance of the evidence that he is 40 years or older and that his age was a substantial factor in Defendant's decision to terminate him. *Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wash. 2d 302, 309-10 (1995). Plaintiff does not have to prove that age was the only factor or the main factor in the decision, or that Mr. Rodriguez would have been retained, but for his age. *Id.*

The testimony and evidence presented by Plaintiff is not enough to meet his burden of showing that it was more likely than not that age was a substantial factor in Defendant's decision to terminate him. Plaintiff presented no evidence that younger employees were treated differently from older employees or that Plaintiff's age played any part in McCain's decision to ultimately fire him. Additionally, Defendant presented ample evidence showing that it had a legitimate, non-discriminatory reason to terminate Plaintiff's employment. As a result, Plaintiff has the burden of overcoming the inference that age was not a substantial

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 8

factor in his termination. Based on the evidence presented at trial, Plaintiff has not met his burden.

## II.  Wrongful Discharge

In Washington, there is a statutory remedy for discharge of an employee in retaliation for filing a claim for workers' compensation benefits under Wash. Rev. Code § 51.48.025. However, the Washington Supreme Court has recognized that a party may bring an action at common law for retaliatory discharge, based on public policy. In *Wilmot v. Kaiser Aluminum & Chem. Corp.*, the Washington Supreme Court "acknowledge[d] existence of a clear mandate of public policy against retaliatory discharge of employees for pursuing workers' compensation benefits and allow[ed] a tort action for wrongful discharge . . . ." 118 Wash. 2d 46, 54 (1991).

To prove wrongful discharge, Plaintiff must show that he was terminated, in substantial part, in retaliation for filing a workers' compensation claim. *Id*. at 75-76. Plaintiff is not required to prove his employer's sole motivation was retaliation, but must only "produce evidence that pursuit of a workers' compensation claim was *a* cause of the firing . . . ." *Id*. at 70 (emphasis in original).

The testimony of Mr. Korrell and Mike Schmidt, who was present when the supervisors interviewed Plaintiff after the incident on March 11, 2004, along with the hand-written notes from Mr. Lance and Mr. Zattiero concerning said interviews with Plaintiff and Mr. Appleby regarding the events leading up to Plaintiff's termination, illustrate that the supervisors deciding whether to fire Mr. Rodriguez were concerned mainly about his unsafe work habits, and that they reasonably believed that Plaintiff violated lockout/tagout on March 11, 2004. The supervisors' notes and testimony reflect no retaliatory animus or, in the case of Messrs. Lance and Zattiero, that they even knew of Plaintiff's previously-filed L&I claim. The utter lack of evidence of retaliatory animus, along with the 14-month

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 9

period between the time Plaintiff filed his L&I claim and his termination, fail to demonstrate the necessary causal connection between Plaintiff's protected activity and his termination. *See id*. at 69. Plaintiff has the burden of proving that his filing of an L&I claim for hearing aids was a substantial factor in his termination. Based on the evidence presented at trial, Plaintiff has not met his burden. The Court finds that it is more likely than not that (1) Defendant fired Plaintiff for a legitimate, non-retaliatory purpose; and (2) Plaintiff's protected activity of filing an L&I claim was not a substantial factor in Defendant's decision to terminate him.

## CONCLUSION

Losing one's job at the age of 61, after being employed for more than 20 years at the same location, is always difficult. The Court is certain that Plaintiff feels wronged by Defendant. Nevertheless, the evidence does not show that either Plaintiff's age or his filing for an L&I claim played a part in Defendant's decision to terminate him. Instead, the decision to fire Mr. Rodriguez was on account of Defendant's reasonable belief that Plaintiff violated a legitimate workplace safety policy. Such violation justified Mr. Rodriguez's termination, according to the corrective discipline measures outlined in McCain's employee handbook.

The Court is sympathetic to Plaintiff's current situation. However, Washington law requires more than termination at an advanced age and/or after participation in a protected activity. To be successful in either of these claims, Plaintiff had the burden of establishing either a discriminatory and/or retaliatory motive on the part of McCain Foods. In this case, the record does not support a finding that McCain Foods violated Washington law. Therefore, Plaintiff's claims fail.

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED**

1. Plaintiff's claims are **DISMISSED** and judgment is granted in favor of Defendant.

2. The District Court Executive shall enter judgment in favor of the

FINDINGS OF FACT AND CONCLUSIONS OF LAW * 10

Defendant.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and forward copies to counsel and **close** the file.

**DATED** this 21st day of November, 2005.

                              s/ ROBERT H. WHALEY
                     CHIEF UNITED STATES DISTRICT JUDGE

Q:\CIVIL\2004\Rodriguez\Rodriguez.ffcl.wpd